112 F.3d 517
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eduardo Javier TERAN, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-70756.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 21, 1997.*
Decided April 25, 1997.
 
 Before: BROWNING, THOMPSON, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Eduardo Javier Teran, a native and citizen of Nicaragua, petitions for review of an order of the Board of Immigration Appeals ("BIA"), which dismissed Teran's appeal of an immigration judge's ("IJ") decision denying his application for asylum and withholding of deportation.[1] We have jurisdiction under 8 U.S.C. § 1105a(a), and we deny the petition for review.
 
 
 3
 We review a denial of asylum for an abuse of discretion. Ramos-Vasquez v. INS, 57 F.3d 857, 861 (9th Cir.1995). The factual findings underlying the decision will be upheld if supported by substantial evidence. Prasad v. INS, 47 F.3d 336, 338 (9th Cir.1995). We will uphold the decision unless the evidence compels a contrary result. INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).
 
 
 4
 To qualify for asylum, an applicant must show that he is a refugee as defined in 8 U.S.C. § 1101(a)(42)(A). This is established by evidence of past persecution or of a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. See Ramos-Vasquez, 57 F.3d at 862. To establish a well-founded fear of persecution, the applicant bears the burden of showing both a genuine subjective fear of persecution and an objectively reasonable fear of persecution. Id. The objective component requires a showing by credible, direct and specific evidence in the record. Id.
 
 
 5
 Teran testified that he was forced to join the Sandinista army in 1982 at the age of fifteen. On at least two occasions between 1987 and 1988, Teran tried to desert the army, but was caught each time and placed in detention. On one of these occasions, Teran was burned with cigarettes by a Sandinista army officer because "that's how the enemies of Sandinistas ... were punished." In 1988, the Sandinistas transferred Teran to a job as a recording technician in the National Assembly. After Teran left this job without permission in 1990, armed members of the military arrived on two occasions at Teran's mother's house to find him, and informed his mother that if they found Teran, they would kill him. Teran left Nicaragua in November, 1991, on a tourist visa. After staying in the United States for one month, he returned to Nicaragua to "see how I could get visa[s] for my children and my family." Upon his return to Nicaragua, Teran had to hide "because I [was] being pursued because of the Sandinist [sic] repression." Teran returned to the United States without inspection in December, 1991. He contends that the Sandinistas will kill him if he returns to Nicaragua because "I was not in agreement with them."
 
 
 6
 The evidence presented by Teran does not compel a conclusion that he has suffered past persecution or has a well-founded fear of future persecution. See Ramos-Vasquez, 57 F.3d at 862. First, while Teran testified that he was placed in detention and burned with cigarettes for attempting to desert the Sandinista army in 1987 and 1988, he also testified that he was transferred to a job as a recording technician in the National Assembly in 1988, and worked without incident until he left this position without permission in 1990. Second, because the Sandinistas lost the general elections in 1990, service in any Sandinista organization is no longer required, and President Chamorro abolished compulsory military service. Third, while Teran testified that he received death threats after leaving his position with the National Assembly and fears that he will be murdered as a traitor upon his return to Nicaragua, the 1995 Nicaragua Country Conditions profile states that the out-of-power Sandinistas do not have a general policy of systematic repression of returnees, and that only deserters of the Sandinistas who held sensitive positions and damaged the Sandinistas in some manner face the possibility of punishment if they return to Nicaragua. Teran did not provide any evidence at the asylum hearing that he held a sensitive position with the Sandinistas, or that his departure damaged the Sandinistas in any way, such that his fear of punishment is well-founded. See Bolanos-Hernandez v. INS, 767 F.2d 1277, 1285 (9th Cir.1985) (stating that the critical question when an applicant is threatened is whether "there is reason to take the threat seriously").
 
 
 7
 Although Teran testified that his cousin was killed upon his return to Nicaragua, this does not compel a conclusion that Teran has a well-founded fear of persecution. Although we have held that acts of violence against an applicant's family members can establish a well-founded fear of persecution, we have required that this violence create a pattern of persecution closely tied to the applicant. See Ramos-Vasquez, 57 F.3d at 861. Allegations of isolated violence are not enough. Id. Teran provided no details regarding when and why his cousin was killed, and has not established that the killing was part of a pattern of persecution closely tied to Teran and his political opinion. See id.[2]
 
 
 8
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Teran's two minor children have derivative claims
 
 
 [2]
 Because Teran failed to establish eligibility for asylum, he and his children necessarily failed to meet the more stringent standard for withholding of deportation. See Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995)